# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

EDWARD J. BARKES, JR.,         )
         )
        Petitioner,       )     16-cv-4643
         )
      v.         )     Judge John Z. Lee
         )
TERI KENNEDY, Warden,       )
Pontiac Correctional Center,    )
         )
        Respondent.     )

## MEMORANDUM OPINION AND ORDER

Edward Barkes has filed a petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), challenging his convictions for sexual assault and sexual abuse. Barkes advances several grounds for *habeas* relief: ineffective assistance of counsel, illegal search and seizure, disproportionality of the sentence, constructive amendment of the indictment, improper prosecution contact with the jury, and perjured grand-jury testimony. Teri Kennedy, Warden of Pontiac Correctional Center ("Respondent"),[1] argues that Barkes's claims are meritless, non-cognizable, or procedurally defaulted. For the following reasons, the petition is denied [29] [31].[2]

---

[1]    Rule 2(a) of the Rules Governing Section 2254 *habeas* cases provides that the proper respondent is the state officer having custody of the petitioner. *See Bridges v. Chambers*, 425 F.3d 1048, 1049 (7th Cir. 2005). Teri Kennedy is currently the Warden of Pontiac Correctional Center. Accordingly, the Court substitutes Kennedy as Respondent pursuant to Federal Rule of Civil Procedure 25(d).

[2]    Barkes's initial petition was filed on April 25, 2016. On January 29, 2018, the Court allowed Barkes to file an amended petition addressing new claims. *See* Minute Entry of 1/29/2018, ECF No. 30.

**Factual Background**[3]

Barkes was charged in 2004 with seven counts of criminal sexual assault and seven counts of aggravated criminal sexual abuse.  *See* Resp't Ex. N, *People v. Barkes*, No. 2-08-0266, 928 N.E.2d 102, 106 (Ill. App. Ct. Apr. 5, 2010), ECF No. 15-14.  The charges stemmed from a sexual relationship between Barkes, who was 39 years old at the time of trial, and A.H., a 13-year-old.  *See id.*

At trial, A.H. testified that she had sex with Barkes two to three times per week from February 5 to May 18, 2004.  *Id.*  She explained that she had known Barkes since she was 10 years old and that their relationship turned sexual after she moved into his house in the spring of 2004.  *See* Resp't Ex. H, *People v. Barkes*, No. 2-05-0248 (Ill. App. Ct. Nov. 30, 2006), ECF No. 15-8.  Barkes did not force A.H. to have sex with him, although he was aware of her age.  *Id.*  Barkes told A.H. that if he ever went to jail, she should not tell anyone about their relationship.  *Id.* at 2–3.

A.H. testified that four people lived in the house with Barkes at the time: his mother, Ruth Barkes, whom A.H. called "grandma"; his 17-year-old daughter, Nikki Barkes; Nikki's boyfriend, Justin Torres; and Nikki's baby.  *Id.* at 2.  According to A.H., she did not want to stay at home with her mother, Ranetta Cameron, because A.H. did not get along with Cameron's boyfriend.  *Id.* at 2–3.  Instead, A.H. regularly stayed at Barkes's house and told Cameron that she was "staying at Nikki's."  *Id.* at

---

[3]     Pursuant to 28 U.S.C. § 2254(e)(1), the state courts' recitations of fact are presumptively correct in *habeas* proceedings.  *See Sumner v. Mata*, 449 U.S. 539, 547 (1981). Because Barkes has not attempted to rebut the presumption with clear and convincing evidence, *see* 28 U.S.C. § 2254(e)(1), the Court adopts the factual account as provided in the state court record and Respondent's exhibits.

3. She then started to go "back and forth" between Barkes's house and her mother's house, while keeping all of her clothes at Barkes's house. *Id.* at 3. When at Barkes's house, A.H. slept in Barkes's room. *Id.* at 2–3.

Cameron testified that, at some point after January 2004, A.H. began staying at Barkes's house most of the time. *Id.* at 4. She did not know of A.H.'s relationship with Barkes; she only knew that A.H. was friends with Barkes and his daughter. *Id.* She first learned of the relationship on May 18, 2004, when there was a "raid" on Barkes's house. *Id.*

Barkes's mother Ruth testified that Barkes lived with her between January and May 2004 and paid rent. *Id.* at 5. She further testified that A.H. began staying with them at the end of March and slept in Barkes's room. *Id.* Ruth said she came home at 5:30 every evening, and A.H. would usually be sitting on the couch doing homework. *Id.* Ruth never saw any "inappropriate" interactions between A.H. and Barkes. *Id.*

Nikki's boyfriend Torres testified that A.H. was friends with Nikki and stayed at the house from late March to late May 2004. *See id.* at 6. He confirmed that A.H. slept in Barkes's bedroom, but stated that he never witnessed anything indicating that their relationship was sexual. *Id.*

Sergeant Jonathan Whowell testified that he searched the house on May 18, 2004, and found a picture of Barkes and A.H in Barkes's room. *Id.* at 6. Sergeant Whowell also testified that, between May and July 2004, the police collected about 40

letters written by Barkes that referenced his relationship with A.H. *Id.* These letters were sent while a no-contact order was in place between Barkes and A.H. *See id.*

Nick Priebe, a convicted felon who had shared a cell "pod" with Barkes, also testified at the trial. *See id.* Priebe, who did not receive anything in exchange for his testimony, explained that he overheard a conversation between Barkes and another inmate. *See id.* In that conversation, Barkes said that if A.H. said she had sex with him less than 200 times, she was a liar. *See id.* Barkes also said that A.H. performed oral sex on him every day for the six months she lived with him, that she led him to believe that she was 15 years old, and that he planned to marry her after he was released from jail. *Id.*

During closing argument, the prosecutor read the following excerpts from Barkes's letters to A.H. and her family:

> It has to be things that was [said] and done between October 16th, 2003 and May 18th, 2004. It has to be that one most important thing you gave me that now you will never be able to give anyone else. It's that virgin love you gave me. *** Lay back on your love seat *** close your eyes and think of the love we made right there where you're laying. Rub that tummy for me. *** Anyways, I asked her how old she was, she said she was 10. I just about had a heart attack. I knew she was the one but I didn't let her know that until later on. With her age 10 and me 36, I knew I had to wait. I told [her] I wanted her to have a baby for me.

*Id.* at 6–7.

The jury found Barkes guilty of all 14 counts on November 16, 2004. *See* Resp't Ex. N, 928 N.E.2d at 106. The trial court then "merged" the sexual abuse charges into the sexual assault charges. *See id.* Because Illinois law requires sentences for criminal sexual assault to run consecutively, *see* 730 Ill. Comp. Stat. 5/5-8-4(d)(2), the

court sentenced Barkes to seven eight-year terms of incarceration to be served consecutively, for a total of 56 years. *See id.*

## Direct Appeal

On direct appeal, Barkes raised three arguments. First, he argued that his convictions for criminal sexual assault were improper, because he was not in a position of "trust, authority, or supervision" in relation to the victim, as required by 720 Ill. Comp. Stat. 5/12-13(a)(4) (West 1998) (renumbered and amended as 720 Ill. Comp. Stat. 5/11-1.20(a)(4) by P.A. 96-1551, eff. July 1, 2011). Resp't Ex. F, Pet'r Direct Appeal Br. at 12–13, ECF No. 15-6. Second, he argued that he was not proven guilty beyond a reasonable doubt, because the State had failed to establish time frames for each of the seven counts. *Id.* at 14–16. Finally, Barkes argued that his sentence was a disproportionate penalty in violation of the Proportionate Penalties Clause of the Illinois Constitution. *Id.* at 17–19.

The Illinois Appellate Court rejected all three arguments and affirmed the conviction and sentence on November 30, 2006. Resp't Ex. H at 1. Barkes then submitted a *pro se* petition for leave to appeal ("PLA") to the Illinois Supreme Court on December 19, 2006. Resp't Ex. I, Pet'r Direct Appeal PLA, ECF No. 15-9. In the PLA, he again challenged his sentence as excessive and disproportionate. *Id.* at 3–6. The Illinois Supreme Court denied leave to appeal in March 2007. Resp't Ex. J, *People v. Barkes*, No. 103984 (Ill. Mar. 28, 2007), ECF No. 15-10.

## Initial Postconviction Proceedings

Barkes, acting *pro se*, filed his first state postconviction petition in July 2007, raising 15 constitutional violations that he believed supported postconviction relief. *See* Resp't Ex. N, 928 N.E.2d at 106. Among these issues, he claimed that (1) the State had constructively amended the indictment; (2) the State had improper contact with the jury during deliberations; (3) his trial counsel had been ineffective for failing to allow him to waive his right to a jury trial; and (4) his trial counsel had been ineffective by failing to advise him that he would be subject to mandatory consecutive sentences for each count of criminal sexual assault. *See id.* at 106–07; Resp't Ex. B, Trial Common Law Record at 10, 17–29, 34–36, 92–94, ECF No. 15-2.

### A.     First Trial Court Decision

The trial court declined to dismiss Barkes's petition and appointed counsel to represent him. Resp't Ex. N, 928 N.E.2d at 107. Barkes's postconviction counsel filed several amended petitions, incorporating Barkes's previous claims and adding new claims and factual assertions. *Id.* The trial court dismissed the amended postconviction petition in December 2007, concluding that (1) Barkes had forfeited his claims by failing to raise them earlier, and (2) Barkes had not established cause for the forfeiture or prejudice from it. *Id.* at 108. Of particular note, the trial court held that Barkes could not pursue his ineffective-assistance claims without providing affidavits from his previous lawyers. *See id.*

## B.    First Appeal

Barkes, with the help of counsel, appealed the dismissal of the ineffective-assistance claims, arguing that he was entitled to an evidentiary hearing, even without presenting affidavits from his previous lawyers.  Resp't Ex. K, Pet'r 2008 Postconviction Appeal Br. at 8, ECF No. 15-11.  He did not appeal the dismissal of his claims asserting a constructive amendment of the indictment or improper contact with the jury.  *See generally id.*

The Illinois Appellate Court agreed with Barkes, holding that his ineffective-assistance claims were not forfeited and should not have been dismissed.  *See* Resp't Ex. N, 928 N.E.2d at 110–11.  Furthermore, the court concluded that Barkes was entitled to an evidentiary hearing on two of his ineffective-assistance claims: (1) that trial counsel had improperly refused to allow Barkes to waive his right to a jury trial, and (2) that trial counsel had failed to advise Barkes of the mandatory consecutive sentences.  *See id.* at 111–12, 113–14.  The court affirmed the dismissal of the two other ineffective-assistance claims on the merits.  *See id.* at 112–13.

## C.    Evidentiary Hearing

On remand, the trial court held an evidentiary hearing in November 2013. Prior to the hearing, Barkes abandoned his claim that his trial counsel was ineffective by not allowing him to waive his right to a jury trial.  *See* Resp't Ex. V, *People v. Barkes*, No. 1-14-0290 (Ill. App. Ct. Oct. 15, 2015); Resp't Ex. E, Trial Reports of Proceedings at 504:9-21, ECF No. 15-5.  Accordingly, the sole issue at the hearing

was whether Barkes's trial counsel had properly advised him that the sentences on the counts would run consecutively. *See* Resp't Ex. E at 504:9-21.

At the hearing, Barkes's trial counsel testified that about a week or two before trial, he advised Barkes to take the State's plea offer of 25 years. *Id.* at 525:12-18, 526:3-5. He said he told Barkes that, if Barkes lost at trial he faced a minimum sentence of 28 years and a maximum sentence of 105 years. *Id.* at 525:6-10. And, according to counsel, he told Barkes on two separate occasions prior to trial that the criminal sexual assault counts were subject to mandatory consecutive sentences. *Id.* at 530:11-20, 535:22–536:19, 538:3–539:18, 541:5-15, 546:10–547:9.

Barkes's recollection was quite different. Barkes testified that his counsel never told him that he faced mandatory consecutive sentences or a maximum of 105 years. *See id.* at 563:7-12, 570:11-14, 573:2-24, 575:6-13, 584:11-19, 644:19–645:2. On cross-examination, the State questioned Barkes about a letter he wrote before trial, in which he indicated that counsel "said all sex charges can be ran one after another." *See id.* at 645:7–646:4. Barkes stated that, at that time, he didn't "even understand what [counsel] meant." *See id.* at 646:5-6.

**D.     Second Trial Court Decision**

Following the hearing, the trial court denied the petition in February 2014. Resp't Ex. D, Trial Common Law Record at 202–03, ECF No. 15-4. The court found trial counsel's testimony that he had verbally informed Barkes that the criminal sexual assault charges required consecutive sentences to be credible. *Id.* By contrast, the court found that Barkes's testimony was not credible, especially in light of his

letter admitting that counsel had told him the charges "could be run one after another." *Id.* What is more, the court found that, although Barkes had repeatedly requested concurrent sentences from his counsel and the prosecutor, this did not show that he was not advised of the applicability of mandatory consecutive sentences. Rather, "[i]t is more likely that the defendant refused to acknowledge the reality of such sentencing and merely wanted a better disposition of his cases." *Id.*

### E.    Second Appeal and PLA

Barkes once again appealed the denial of the petition, and the trial court appointed counsel to represent him on appeal. *See* Resp't Ex. V at 3. But soon thereafter, his counsel moved to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), asserting that there were no issues of arguable merit. *See id.*; Resp't Ex. T, *Finley* Mot. in 2014 Postconviction Appeal, ECF No. 15-20. For his part, Barkes responded that there was "overwhelming evidence" that he was not informed that he would be sentenced to mandatory consecutive sentences. Resp't Ex. U, Pet'r Resp. *Finley* Mot. in 2014 Postconviction Appeal at 3, ECF No. 15-21. The Illinois Appellate Court granted the *Finley* motion and affirmed. Resp't Ex. V at 4–5.

Barkes filed a PLA, insisting that counsel did not inform him of the mandatory consecutive nature of his sentences. Resp't Ex. W, Pet'r PLA in 2014 Postconviction Appeal at 3, ECF No. 15-23. The Illinois Supreme Court denied the PLA on March 30, 2016. Resp't Ex. X, *People v. Barkes*, No. 120224 (Ill.), ECF No. 15-24.

## First Successive Postconviction Petition

While Barkes's initial postconviction petition was on remand and before the evidentiary hearing was held in November 2013, he moved for leave to file a second or successive postconviction petition. *See* Resp't Ex. Q, *People v. Barkes*, No. 1-10-1205 (Ill. App. Ct. Feb. 16, 2012), ECF No. 15-17. In the motion, he sought to raise a number of arguments, including that (1) the State had constructively amended the indictment; (2) the State had improperly communicated with the jury; (3) evidence had been illegally seized from his home; and (4) trial counsel had fail to discuss a plea agreement with him. *See* Resp't Ex. O, *Finley* Mot. in 2010 Postconviction Appeal at 5–6, ECF No. 15-15. The trial court denied him leave to file the petition in September 2010. *See id.* at 6.

Barkes appealed, and, on appeal, appointed counsel filed a *Finley* motion. *See generally id.* The Illinois Appellate Court granted the motion and affirmed the denial. Resp't Ex. Q at 2–3. The court found that Barkes was raising claims that had already been adjudicated in his initial petition, or was raising new claims without establishing cause for his failure to assert them earlier. *See id.* at 3.

Barkes filed a PLA, arguing that his claims had merit, and that the ineffectiveness of his prior counsel was the reason that he failed to raise certain claims in his initial petition. *See generally* Resp't Ex. R, Pet'r 2010 Postconviction PLA, ECF No. 15-18. The Illinois Supreme Court denied the PLA in May 2012. Resp't Ex. S, *People v. Barkes*, No. 114078 (Ill. May 30, 2012), ECF No. 15-19.

## Second Successive Postconviction Motion

In June 2016, Barkes tried a second time to file a successive postconviction petition. *See* Resp't Ex. Y, *People v. Barkes*, No. 2-16-0861 (Ill. App. Ct. July 27, 2017), ECF No. 32-1. This time, he alleged that he was denied due process when Sergeant Whowell testified falsely before the grand jury that A.H.'s parents had contacted the police. *See id.* The trial court denied Barkes leave to file the petition. *See id.* On appeal, the Illinois Appellate Court concluded that Barkes had failed to establish that he had been prejudiced by Sergeant Whowell's testimony, given the lack of evidence that the testimony had actually been false. *See id.* at 6–7. Furthermore, the court noted, Barkes did not argue that the grand jury would not have indicted him absent Sergeant Whowell's testimony. *See id.*

Barkes filed a PLA, again challenging Sergeant Whowell's grand-jury testimony. *See generally* Resp't Ex. CC, Pet'r 2017 Postconviction PLA, ECF No. 32-5. The Illinois Supreme Court denied the PLA on November 22, 2017. Resp't Ex. DD, *People v. Barkes*, No. 122643 (Ill. Nov. 22, 2017), ECF No. 32-6.

## Federal *Habeas* Claims

In his amended *habeas* petition, Barkes presents the following claims: (1) that trial counsel was ineffective for failing to advise him that his sentences would run consecutively if he were convicted; (2) that the police in searching his home went beyond the bounds of the warrant, violating his rights under the Fourth Amendment; (3) that his sentence was disproportionate to the nature of the offense; (4) that the State had constructively amended the indictment; (5) that the State had improper

contact with the jury during deliberations; and (6) that Sergeant Whowell had testified falsely before the grand jury, violating Barkes's right to due process.

### Legal Standard

A writ of *habeas corpus* will be granted only if the Petitioner demonstrates that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under AEDPA, the Court may not grant *habeas* relief unless the state court's decision on the merits was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or the state-court decision is based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d).

"A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "An 'unreasonable application' occurs when a state court 'identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts' of petitioner's case." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (quoting *Wiggins v. Smith*, 539 U.S. 510, 520 (2003)).

Clearly established federal law consists of the "holdings, as opposed to the *dicta*, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). The state court is not required to cite to, or even be aware of,

the controlling Supreme Court standard, so long as the state court does not contradict that standard. *Early v. Packer*, 537 U.S. 3, 8 (2002). And the Court begins with a presumption that state courts both know and follow the law. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). Moreover, the Court's analysis is "backward-looking." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). That is to say, the Court is limited to reviewing the record before the state court, as well as the Supreme Court precedent in existence, at the time of the state-court decision. *Id.*; *Greene v. Fisher*, 132 S. Ct. 38, 44 (2011).

"AEDPA's standard is intentionally 'difficult [for Petitioner] to meet.'" *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014); *Metrish v. Lancaster*, 569 U.S. 351, 352 (2013)). "As a condition for obtaining *habeas corpus* from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). This "highly deferential standard . . . demands that state-court decisions be given the benefit of the doubt." *Woodford*, 537 U.S. at 24 (internal quotation marks omitted). This is so because *habeas corpus* is a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102–03 (internal quotation marks omitted). "Under § 2254(d), a *habeas* court must determine what arguments or theories supported, or . . . could have supported, the state court's

decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e] [Supreme] Court." *Id.* at 102.

<u>Analysis</u>

## I.    Ground One: Ineffective Assistance of Trial Counsel

Barkes first contends that his trial counsel was ineffective for failing to advise him that, pursuant to Illinois law, his sentences for criminal sexual assault were required to run consecutively. Barkes asserts that, prior to trial, the State offered him a plea deal for 25 years, which he would have taken had he known of the mandatory consecutive nature of any possible sentences.

Under AEDPA, "ineffective assistance of counsel is a mixed question of law and fact reviewed *de novo* with a strong presumption that the attorney performed effectively." *Allen v. Chandler*, 555 F.3d 596, 600 (7th Cir. 2009). To establish ineffective assistance, a petitioner must show both that his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 688–93 (1984); *see Ebert v. Gaetz*, 610 F.3d 404, 411 (7th Cir. 2010). "Judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. A *habeas* petitioner "must do more than show he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance. . . . [H]e must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Emerson v. Shaw*, 575 F.3d 680,

685 (7th Cir. 2009). Simply put, the court's decision must be "well outside the boundaries of permissible differences of opinion." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002).

Here, the Circuit Court of Kendall County found, as a factual matter, that Barkes's trial counsel properly advised him of the possibility of mandatory consecutive sentences. After an evidentiary hearing, during which the court heard from both trial counsel and Barkes, the court concluded:

> [W]hile it is undisputed that the defendant was not advised in writing of the likelihood of consecutive sentences for the various offenses with which he was charged; [trial counsel] is credible in his testimony that he verbally informed the defendant that the charges against him required consecutive sentences. Similarly, the defendant is not credible in his testimony that he was not so informed, especially when he testified, "My attorney said that my charges could be run one after another." Even after that statement at [the] hearing, the defendant continued to insist that he was never advised of the likelihood of consecutive sentencing, which the court finds incredulous, when his testimony is taken as [a] whole. Defendant argues that his repeated requests for concurrent sentences indicate that he was not advised of the consecutive sentencing. It is more likely that the defendant refused to acknowledge the reality of such sentencing and merely wanted a better disposition of his cases.

Resp't Ex. D at 202–03. The Illinois Appellate Court and Illinois Supreme Court both affirmed this disposition. *See* Resp't Ex. V at 4–5; Resp't Ex. X.

"State court findings, including credibility determinations, are presumed correct on federal *habeas* review, unless the petitioner rebuts those findings with 'clear and convincing evidence.'" *Wooley v. Rednour*, 702 F.3d 411, 426–27 (7th Cir. 2012) (internal quotation marks omitted). Because the state court's decision here rests on a determination that trial counsel was a more credible witness, Barkes must

satisfy a heavy burden to persuade the Court of his position. To do so, Barkes argues that the state court's factual findings were clearly erroneous for two reasons.

First, Barkes argues, his prior statement that trial counsel "said that [his] charges could be run one after another" does not prove that Barkes knew the sentences were *required* to run consecutively. Rather, according to Barkes, although he was aware that consecutive sentences were a possibility, he was never informed by his attorney that consecutive sentences were mandated by law. In fact, as Barkes points out, he testified during the November 2013 evidentiary hearing that he did not "understand what [counsel] meant." Resp't Ex. E at 646:1-6.

Barkes's view of the evidence falls far short of surmounting the clear and convincing hurdle. The state court was entitled to credit trial counsel's testimony that he explained to Barkes the mandatory consecutive nature of the sentences. Furthermore, it was reasonable for the trial court to question the reliability of Barkes's testimony in light of his prior statement that his attorney had told him that the "charges could be run one after another." At most, the evidence reflects that Barkes may not have fully understood or accepted what his counsel told him. But even if that were the case, that would not render counsel's performance deficient so long as the lawyer provided appropriate advice. *See Bethel v. United States*, 458 F.3d 711, 717 (7th Cir. 2006) ("The salient question is whether counsel undertook a good-faith effort to determine the applicable facts and estimate the sentence."). Accordingly, the state court's finding that counsel did so is not objectively unreasonable.

Barkes also argues, however, that his continued requests during the pretrial phase that the court permit him to serve any sentences concurrently and his rejection of a lower plea agreement prove that he was not aware that consecutive sentences were mandatory. The state court addressed this argument, concluding that it was more likely that Barkes simply refused to acknowledge the reality of mandatory consecutive sentences. This, too, was a reasonable conclusion to draw. As already explained, trial counsel testified that he informed Barkes of the consequences of mandatory consecutive sentences, and the court found this testimony more credible than Barkes's.

As such, the Court concludes that the state court made a reasonable determination of fact in holding that trial counsel informed Barkes of mandatory consecutive sentencing. Based on that determination, the state court reasonably applied *Strickland* to determine that trial counsel's performance was not deficient. Barkes's request for *habeas* relief on Ground One is denied.

## II.    Ground Two:  Invalid Search and Seizure

Barkes next argues that his Fourth Amendment rights were violated when "police went beyond the authorized limit[s] of the valid warr[a]nt" to search his home. Am. § 2254 Pet. at 5, ECF No. 31. The warrant, he contends, authorized only the seizure of evidence relating to possession or intent to deliver cannabis. *Id.* Yet the police confiscated "unrelated" evidence, namely, "photos of petitioner and the victim, letters between petitioner and the victim and other personal [items] between the two of them." *Id.* at 5, 11–12.

Respondent contends that this claim is not cognizable on *habeas* review, stating that: "[w]here the State provides an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner is not entitled to federal *habeas* relief on that ground . . . . Petitioner could have raised his illegal seizure claim in state court but failed to do so." Resp't Answer at 6, ECF No. 33 (citing *Stone v. Powell*, 428 U.S. 465, 494 (1976)).

Respondent is correct. *Stone* "bars a federal *habeas* court from reaching the merits of a petitioner's Fourth Amendment claim so long as the state court granted him a full and fair hearing on the claim." *Monroe v. Davis*, 712 F.3d 1106, 1112–13 (7th Cir. 2013). Relief on a Fourth Amendment claim "requires a *habeas* petitioner to show two things: (1) that the state court denied him a full and fair hearing on his claim, and (2) that the claim was meritorious." *Id.* at 1113.

Barkes acknowledges that he did not raise a Fourth Amendment claim during the trial, appeal, or initial postconviction phases. His first attempt at filing a successive postconviction petition in 2010, however, asserted that both appellate counsel and post-conviction appellate counsel had rendered ineffective assistance by failing to object to the introduction of illegally seized evidence. *See* Resp't Ex. O at 5. In affirming the denial of his motion, the Illinois Appellate Court ruled that Barkes had not established cause for his failure to raise this issue in his initial postconviction petition. Resp't Ex. Q at 2–3.

Barkes argues that the proceedings on his first successive postconviction petition should not be considered a "full and fair opportunity to litigate" his Fourth

Amendment claim, because at the time, he "wasn't aware of all the facts" underlying the claim. Reply at 9, ECF No. 36. In particular, he states that he first received a transcript of the grand-jury proceedings in 2015. From that transcript, he learned that Sergeant Whowell, who had been assigned to investigate A.H.'s sexual assault and not the drug charges, accompanied officers in conducting the search of Barkes's home, even though its ostensible purpose was to look for evidence of controlled substances. This, Barkes argues, proves that Sergeant Whowell went along on the search with the express purpose of exceeding the terms of the warrant and looking for evidence of sexual assault.

Even if Barkes is correct, his claim cannot be litigated on *habeas* review. Although a full and fair opportunity to present a Fourth Amendment claim guarantees a petitioner the right to "have a judge listen to and consider the evidence a party actually presents at trial," it does not require that "the evidence necessary to make the party's best claim be available by the time of trial." *Brock v. United States*, 573 F.3d 497, 501 (7th Cir. 2009). Accordingly, a Fourth Amendment claim based on later-discovered evidence is not cognizable under *Stone*. *See id.* This is because the purpose of the exclusionary rule is not to ensure a "correct result," *id.* at 501, but instead to "deter violations of the Fourth Amendment by removing the incentive to disregard it," *id.* at 499 (internal quotation marks omitted). And "[t]he deterrent calculus . . . is not dependent on when evidence surfaces, as long as the trial was administered in a just manner. Police misconduct will not be materially checked by fear that Fourth Amendment violations that go undiscovered during trial [and]

appeal . . . will be discovered and used" in a federal *habeas* petition. *Id.* at 501; *see United States v. Lee Vang Lor*, 706 F.3d 1252, 1259 (10th Cir. 2013) ("Absent ineffective assistance of counsel or government concealment, a defendant cannot claim that the mere existence of undiscovered material evidence deprived him of an *opportunity* to litigate his claim.") (emphasis in original).

Barkes had a full and fair opportunity to litigate Fourth Amendment claims in the trial court, if he had chosen to do so. The fact that he was unable to secure evidence supporting such a claim until later does not, under *Stone*, entitle him to raise it now. Accordingly, Barkes's *habeas* petition is denied as to Ground Two.

## III.  Ground Three: Disproportionality of the Sentence

Barkes next argues that "[t]he fifty-six year sentence imposed on [him] is a disproportion[ate] penalty in light of the nature of the offense." Am. § 2254 Pet. at 6. Respondent contends that this claim is not cognizable under either the United States Constitution or the Proportionate Penalties Clause of the Illinois Constitution.

In analyzing a *habeas* petition, a federal court is limited to determining if a conviction violates the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254. Accordingly, violations of state laws or constitutional provisions are beyond the scope of *habeas* review. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Thus, for Barkes's proportionality claim to be cognizable, it must raise a claim under clearly established federal precedent. *See Carey*, 549 U.S. at 74.

The Eighth Amendment requires "some degree of sentencing proportionality." *Henry v. Page*, 223 F.3d 477, 482 (7th Cir. 2000). But only a sentence that is both

"extreme" and "grossly disproportionate to the crime" is generally thought to violate the Eighth Amendment. *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring) (upholding a mandatory life sentence for possession of over 650 grams of cocaine); *see also Ewing v. California*, 538 U.S. 11, 23 (2003) (upholding a sentence of 25 years to life for the theft of three golf clubs). Usually, "in non-capital felony convictions, a particular offense that falls within legislatively prescribed limits will not be considered disproportionate unless the sentencing judge has abused his discretion." *United States v. Vasquez*, 966 F.2d 254, 261 (7th Cir. 1992).

Here, as the Illinois Appellate Court explained on Barkes's direct appeal, Barkes's sentences are within legislative limits and are mandated to run consecutively. *See* Resp't Ex. H at 14. Furthermore, Barkes had 14 prior convictions, was on parole at the time of his arrest, and the evidence indicated that he had intercourse with A.H. on many more occasions than those for which he was charged. *See id.* at 15–16. In light of these aggravating factors and the fact that his sentence was within legislative limits, Barkes cannot show that his sentence was "grossly disproportionate" or otherwise violated any clearly established federal law. *Henry*, 223 F.3d at 482. Barkes's *habeas* petition is thus denied as to Ground Three.

## IV. Ground Four: Constructive Amendment of the Indictment

Ground Four of Barkes's amended *habeas* petition alleges that the State "constructively amended each of the petitioner's seven criminal sexual assault indictments at trial without jurisdictional authority" in violation of his right to be tried on only the charges returned by the grand jury, and his right to notice

"extreme" and "grossly disproportionate to the crime" is generally thought to violate the Eighth Amendment. *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring) (upholding a mandatory life sentence for possession of over 650 grams of cocaine); *see also Ewing v. California*, 538 U.S. 11, 23 (2003) (upholding a sentence of 25 years to life for the theft of three golf clubs). Usually, "in non-capital felony convictions, a particular offense that falls within legislatively prescribed limits will not be considered disproportionate unless the sentencing judge has abused his discretion." *United States v. Vasquez*, 966 F.2d 254, 261 (7th Cir. 1992).

Here, as the Illinois Appellate Court explained on Barkes's direct appeal, Barkes's sentences are within legislative limits and are mandated to run consecutively. *See* Resp't Ex. H at 14. Furthermore, Barkes had 14 prior convictions, was on parole at the time of his arrest, and the evidence indicated that he had intercourse with A.H. on many more occasions than those for which he was charged. *See id.* at 15–16. In light of these aggravating factors and the fact that his sentence was within legislative limits, Barkes cannot show that his sentence was "grossly disproportionate" or otherwise violated any clearly established federal law. *Henry*, 223 F.3d at 482. Barkes's *habeas* petition is thus denied as to Ground Three.

## IV. Ground Four: Constructive Amendment of the Indictment

Ground Four of Barkes's amended *habeas* petition alleges that the State "constructively amended each of the petitioner's seven criminal sexual assault indictments at trial without jurisdictional authority" in violation of his right to be tried on only the charges returned by the grand jury, and his right to notice

guaranteed by the Fifth and Fourteenth Amendments. Am. § 2254 Pet. at 6. He further argues that, although the indictment states that the sexual assaults occurred between February 1 and May 18, 2004, A.H. and others testified at trial that she did not move into Barkes's home until late March 2004. Accordingly, Barkes argues, the period of time alleged in the indictment covers nearly two months before the sexual relationship started, so his convictions covering that time period are invalid. Respondent contends that this claim (1) is not cognizable because there is no federal right to a grand-jury indictment in state court, or (2) is procedurally defaulted.

State criminal defendants have no federal constitutional right to be indicted by a grand jury. *Bae v. Peters*, 950 F.2d 469, 477 (7th Cir. 1991). Accordingly, "an allegation that an indictment amendment violated [a petitioner's] right to be indicted by a grand jury should not be sufficient grounds to grant *habeas corpus*." *Id.* Still, "the validity of an indictment is subject to measurement against general [F]ourteenth [A]mendment guarantees of due process"—in other words, fair notice. *Id.* at 478 (quoting *United States ex rel. Ballard v. Bengston*, 702 F.2d 656, 660 (7th Cir. 1983) (per curiam)). Accordingly, Barkes's claim could be cognizable as a due-process claim, if it is not subject to procedural default.

There are two ways in which a claim may become procedurally defaulted. First, if a petitioner did not present a claim through "one complete round" of the appellate process, *habeas* review is not available. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Furthermore, the Court "will not review questions of federal law presented in a *habeas* petition when the state court's decision rests upon a state-law

ground that 'is independent of the federal question and adequate to support the judgment.'" *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). "A claim will be procedurally defaulted—and barred from federal review—if the last state court that rendered judgment 'clearly and expressly states that its judgment rests on a state procedural bar.'" *Lee v. Foster*, 750 F.3d 687, 693 (7th Cir. 2014) (quoting *Harris v. Reed*, 489 U.S. 255, 263 (1989)). The state court must have "actually relied on the procedural bar as an independent basis for its disposition." *Thompkins v. Pfister*, 698 F.3d 976, 986 (7th Cir. 2012). "A state law ground is adequate when it is a firmly established and regularly followed state practice at the time it is applied." *Id.*

Barkes raised the issue of constructive amendment in his initial postconviction petition. The Circuit Court of Kendall County, however, found the issue forfeited because he did not raise it at trial or on direct appeal. *See* Resp't Ex. E at 283:11–285:15. Forfeiture is an adequate state ground supporting procedural default. *See Kaczmarek v. Rednour*, 627 F.3d 586, 591–92 (7th Cir. 2010).

What is more, when presented with the opportunity to appeal this disposition, Barkes did not do so. Instead, through counsel, he appealed only the denial of his ineffective-assistance claims. *See generally* Resp't Ex. K. And in the second appeal of his postconviction petition following the evidentiary hearing, Barkes challenged only the mandatory consecutive sentencing issue. *See generally* Resp't Ex. U; Resp't Ex. W. Accordingly, Barkes failed to challenge the amendment of his indictment

through "one complete round" of the state appellate process. *O'Sullivan*, 526 U.S. at 845; *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004).

Barkes did raise this issue in his first motion for leave to file a successive postconviction petition, and on appeal from the denial of that motion. *See* Resp't Ex. O at 5; Resp't Ex. P, Pet'r Resp. *Finley* Mot. in 2010 Postconviction Appeal at 11–12, ECF No. 15-16. But the Illinois Appellate Court declined to address the issue, given that it had already been raised in the initial postconviction proceedings. Resp't Ex. Q at 2–3. Barkes raised the issue again in his PLA, but the Illinois Supreme Court affirmed. *See generally* Resp't Ex. R; Resp't Ex. S.

Accordingly, the last court to address Ground Four on the merits was the Circuit Court of Kendall County on initial postconviction review. *See Weaver v. Nicholson*, 892 F.3d 878, 883 (7th Cir. 2018) ("[W]e review the last state court decision to address the merits of a prisoner's claim."). Because that court provided an adequate and independent state ground for its decision, Ground Four is procedurally defaulted to the extent it raises a due-process claim. *See Cone*, 556 U.S. at 465. Accordingly, *habeas* relief is denied as to Ground Four.

## V.     Ground Five: Prosecution Contact with the Jury

In Ground Five, Barkes alleges that, after sending the jury to deliberate, the trial judge allowed the prosecutor to hand-deliver documents to the jury room. Barkes argues that this improper contact violated his due-process rights. Respondent contends that this claim is procedurally defaulted and meritless.

Barkes's litigation of Ground Five proceeded in the state courts in exactly the same manner as Ground Four, and accordingly is procedurally defaulted for the same reasons. In other words, the Circuit Court of Kendall County concluded that this claim was forfeited on initial postconviction review, and Barkes did not appeal that disposition. *See* Resp't Ex. E at 283:11–285:15; *see generally* Resp't Ex. K; Resp't Ex. U; Resp't Ex. W. Although Barkes also attempted to raise this issue in his first successive postconviction motion and the appeal from its denial, the state courts declined to address the issue again. *See* Resp't Ex. P at 11–12; Resp't Ex. Q at 2–3. Accordingly, the Court denies Ground Five as procedurally defaulted.

## VI. Ground Six: False Grand Jury Testimony

Finally, Barkes contends that he was denied the right to due process under the Fourteenth Amendment when, during the grand-jury proceedings, Sergeant Whowell offered false testimony. Specifically, Barkes argues that Sergeant Whowell "testified falsely before the grand jury, and gave inaccurate and deceptive evidence, when he testified that the police department was contacted by A.H.'s parents concerning the defendant's relationship with A.H." Am. § 2254 Pet. at 15. Upon filing a Freedom of Information Act request, Barkes states, he has found that no police reports reflect that the police had any communication with A.H.'s parents prior to the search of his home. *Id.* at 15–16. Respondent argues that Ground Six is not cognizable because there is no federal constitutional right to indictment by a grand jury.

Respondent is correct. *See Bae*, 950 F.2d at 477. Furthermore, the fact that Barkes was convicted by a *petit* jury renders the alleged grand-jury error harmless

because it demonstrates "that there was probable cause to believe that the defendant[ ] [was] guilty as charged." *United States v. Mechanik*, 475 U.S. 66, 70 (1986). Barkes does not allege that the same misrepresentation was made before the *petit* jury or even that the prosecutor was aware of it. Thus, even if Sergeant Whowell did lie to the grand jury, no clearly established federal law entitles Barkes to relief. *See Anderson v. Sec'y for Dep't of Corr.*, 462 F.3d 1319, 1327 (11th Cir. 2006) ("There is no Supreme Court precedent clearly establishing a constitutional rule that, irrespective of prosecutorial misconduct, an indictment must be dismissed because of perjured grand jury testimony where the perjurious testimony is not repeated before the *petit* jury which convicts."). Accordingly, the Court denies *habeas* relief as to Ground Six.

## Conclusion

For the reasons provided herein, Barkes's amended petition for *habeas corpus* is denied. The Court declines to issue a certificate of appealability. Barkes has not made a substantial showing that reasonable jurists could debate whether his motion should have been resolved in a different manner. *See* 28 U.S.C. § 2253(c)(2); *Narvaez v. United States*, 674 F.3d 621, 626 (7th Cir. 2011) (citing *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000)). Civil case terminated.


**IT IS SO ORDERED.**          **ENTERED: 5/30/19**

                               *John Z. Lee*
                               _____
                               **John Z. Lee**
                               **United States District Judge**